(778 P.2d 365)

No. 62,715

JACQIE JOY (HARRIS) SPRADLING, *Appellant,* v. BOBBY JAMES HARRIS (JOYCE WYATT), *Appellee.*

Petition for review denied September 26, 1989.

Opinion filed July 14, 1989.

*Kathleen R. Urbom,* of Topeka, for the appellant.

*Melody Cathey,* of Law Offices of Jerry K. Levy, P.A., of Topeka, for the appellee.

Before ABBOTT, C.J., BRISCOE and BRAZIL, JJ.

ABBOTT, C.J.: Jacqie Joy Harris Spradling appeals the trial court's order granting her mother, Joyce Wyatt, visitation with Spradling's children pursuant to K.S.A. 38-129(a).

Jacqie Joy Spradling and Bobby James Harris were married in 1979. Their son, Bobby Jr., was born on May 16, 1980. After an abusive marriage, the Shawnee County District Court granted Spradling a divorce from Harris in 1981. On July 16, 1982, Spradling gave birth to a daughter, Brandii.

Spradling married Jeffrey Dean (J.D.) Spradling on December 1, 1985. The Spradlings' daughter, Brianna, was born on April 14, 1987.

Spradling's mother, Joyce Wyatt, requested grandparent visitation rights with Bobby and Brandii Harris and Brianna Spradling. The testimony of the parties at the hearing on the request

for visitation indicated that Spradling and Wyatt have always had a strained relationship. Spradling accuses her mother of physically and emotionally abusing her throughout her life. The Spradlings further testified they are Seventh Day Adventists who believe that Wyatt's lifestyle is an inappropriate religious influence on their children. Wyatt, on the other hand, believes Spradling blames all of her "shortcomings" and problems on Wyatt.

The trial court held that a substantial relationship between Wyatt and her grandchildren exists and that visitation is in the best interests of the children. The court ordered joint counseling before scheduling visitation. Specific visitation was set by order filed July 11, 1988. Pursuant to that order, Wyatt may visit with her grandchildren on the first Sunday of each month from 1 p.m. to 6 p.m. and may speak to her grandchildren by telephone once a week. Spradling appeals the district court's ruling and raises three issues.

## 1. Right to Privacy

K.S.A. 38-129(a) provides:

"The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established."

In her brief on appeal, Spradling contends the trial court's ruling, pursuant to K.S.A. 38-129(a), violates her right to family privacy, which is "a substantive due process right that is protected under the penumbras of the constitution." It appears from the record, however, that Spradling made no such argument before the trial court.

In her request for dismissal of Wyatt's motion for visitation, Spradling argued the trial court lacked jurisdiction to order grandparent visitation under K.S.A. 1988 Supp. 60-1616. In her memorandum to the trial court in opposition to Wyatt's motion for visitation, Spradling again argued that the court lacked jurisdiction and that there exists a common-law presumption that a parent's decision for his or her child is in the best interests of that child. In her opening statement, Spradling's counsel focused on Wyatt's burden under K.S.A. 38-129(a) to prove "best interests" and a "substantial relationship." During closing, Spradling's counsel argued Wyatt had not met this burden of proof.

When constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. *In re Wicks,* 10 Kan. App. 2d 124, 127, 693 P.2d 481 (1985). Furthermore, the constitutional right to privacy argument fails on its merits.

The Fourteenth Amendment to the United States Constitution provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." A parent's right to establish a home and direct the upbringing and education of children has long been recognized as a fundamental right protected by the Fourteenth Amendment. See *Pierce v. Society of Sisters,* 268 U.S. 510, 534, 69 L. Ed. 1070, 45 S. Ct. 571 (1925) (law unconstitutional which requires children to attend public rather than private schools); and *Meyer v. Nebraska,* 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625 (1923) (law unconstitutional which prohibits teaching of languages other than English in schools).

In *Moore v. East Cleveland,* 431 U.S. 494, 52 L. Ed. 2d 531, 97 S. Ct. 1932 (1977), the Supreme Court acknowledged:

"Of course, the family is not beyond regulation. See *Prince v. Massachusetts,* [321 U.S. 158, 166, 88 L. Ed. 645, 64 S. Ct. 438 (1944)]. But when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation. [Citation omitted.]" 431 U.S. at 499.

In *In re Cooper,* 230 Kan. 57, 64, 631 P.2d 632 (1981), the Kansas Supreme Court stated, "Virtually all jurisdictions including Kansas recognize the parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause." The court noted, however, that parents' rights are not absolute.

"This court has long recognized the State's interest in protecting its children and assuring they receive proper care. [Citations omitted.] In the State's exercise of its parens patriae powers, the child's best interests are always the paramount consideration. [Citations omitted.] The parents' rights cannot be disregarded, however, and the child's best interests may be considered in conjunction with the parents' rights. [Citations omitted.] The parents' rights are subordinate to the State's parens patriae powers and must yield when adverse to the best interests of the child. [Citations omitted.]" 230 Kan. at 62.

In the present case, the trial court claimed jurisdiction over

Bobby pursuant to K.S.A. 1988 Supp. 60-1616 in connection with his parents' divorce, and over all three children pursuant to K.S.A. 38-129 and the doctrine of parens patriae. Clearly, under the doctrine of parens patriae, the State has the power to act under K.S.A. 38-129 and to grant grandparent visitation if it finds such visitation would be in the best interests of its children. At least 48 states have enacted statutes recognizing grandparent visitation rights. See Note, *The Constitutional Constraints on Grandparents' Visitation Statutes*, 86 Colum. L. Rev. 118 (1986).

Spradling notes a growing area of social welfare philosophy which she terms "child's rights," and which she asserts has developed through a commendable need to further a child's health and development. She asserts the legislative history of K.S.A. 38-129 indicates support for the bill came from grandparent and child advocacy groups, but no input was received from parents. Spradling also notes that the testimony in support of the bill related to dysfunctional families. She seems to assert that, in an intact family, K.S.A. 38-129 improperly elevates a third party of the family to the legal status of a parent, thereby violating the right to family privacy.

Spradling cites *Griswold v. Connecticut*, 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965), in which the Supreme Court reasoned:

"Various guarantees create zones of privacy. The right of association contained in the penumbra of the First Amendment is one, as we have seen. The Third Amendment in its prohibition against the quartering of soldiers 'in any house' in time of peace without the consent of the owner is another facet of that privacy. The Fourth Amendment explicitly affirms the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' The Fifth Amendment in its Self-Incrimination Clause enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment. The Ninth Amendment provides: 'The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.'" 381 U.S. at 484.

Although the Supreme Court has found certain rights to be protected from governmental intrusion by the penumbras of other constitutional guarantees, the right to limit grandparent visitation has not been recognized. K.S.A. 38-129 allows grandparent visitation *only* when a court has found that a substantial bond already exists between the grandparent and child and the visits would be in the best interests of the child. Under *Cooper*, the legislature can provide and the court can order such visita-

tion under the doctrine of parens patriae *if* the court makes a finding that the visitation is in the best interests of the children. Because this finding was made in the present case, Spradling's argument that her constitutional right to family privacy was violated must fail.

## 2. Substantial Competent Evidence

K.S.A. 38-129(a) gives the trial court the discretion to grant grandparents reasonable visitation with their minor grandchildren if it finds that such visitation would be in the children's best interests and that a substantial relationship between the grandparents and children exists. The trial court found both requirements in the present case. Spradling contends the trial court's findings are not supported by substantial competent evidence.

"When findings by the trier of fact are challenged for insufficiency of the evidence or as being contrary to the evidence, the appellate court's duty is to review the evidence in the light most favorable to the party prevailing below to determine whether substantial competent evidence exists to support the findings." *In re Adoption of F.A.R.*, 242 Kan. 231, 237, 747 P.2d 145 (1987).

In the present case, Wyatt stated she had seen or spoken to Bobby every week since his birth, except that time during which her daughter refused to allow contact (December 1985 to August 1986 and July 1987 until the present). Spradling and Bobby lived with Wyatt from January 1982 until August 1982. Brandii was born in July 1982 and lived with Wyatt for a month after her birth. Spradling and the two children also lived with Wyatt for about four months during 1984, and Wyatt cared for the children when Spradling attended weekend karate tournaments. Wyatt saw the children on birthdays and holidays until July 1987. Wyatt testified she had developed a substantial bond with her daughter's two oldest children, that she loved them, and they loved her. Spradling testified she had no doubt her mother loved her grandchildren. Wyatt's testimony is substantial competent evidence to support the trial court's holding that there is a substantial relationship between Wyatt and Bobby and Brandii.

Brianna Spradling was born April 14, 1987, and Wyatt testified she had not been allowed to see the children since July 17, 1987. Although Wyatt was not asked about her relationship with the baby, she testified she had not been "with Brianna very much, not very long, three months, but still long enough [that] she'd

coo at me and talk and laugh." The lack of contact was due to Spradling's refusal to allow Wyatt to see Brianna.

We find it difficult to say that the record contains evidence of a substantial relationship between Wyatt and Brianna. The trial court was of the opinion a substantial relationship existed and, although the evidence is meager, we are unable to say the trial court erred. Certainly, it is in Brianna's best interests that she not be treated differently than her siblings.

Both Peter C. Novotny, M.D., a psychiatrist at the Menninger Foundation, and Brenda Walker, Court Services Domestic Relations Counselor, testified that it is generally in the best interests of children to have a good loving relationship with their grandparents. Neither expert, however, would agree that it would be in the best interests of Spradling's children to see Wyatt without some resolution of the conflict between Wyatt and her daughter. Both agreed the conflict within the family could, in fact, be harmful to the children.

Walker testified she could not state it would be in the best interests of the children to have visitation with their grandmother over their parents' objection. Walker did testify that, if Wyatt and Spradling could "agree to disagree privately and not involve the grandchildren in their dispute," it would be in the best interests of the children to allow visitation.

Novotny stated that, due to the current conflicts between Spradling and her mother, it is not in the best interests of the children to have visitation with Wyatt over the objection of their mother. Novotny testified that, considering the intensity of the conflict, it would be insufficient for Spradling and Wyatt to merely "decide to keep it inside" for the sake of the children. Novotny never talked to Wyatt and does not appear to have ever talked to the children. He was counseling the Spradlings because of marital problems they were having. Spradling would not allow Walker to visit with the children. No one talked to the two older children concerning their wishes. Wyatt testified that Brandii cried and clung to her because she was afraid she would not be able to see Wyatt again.

Although Spradling did testify that she believes it would be in the best interests of her children to have a loving relationship with their grandmother, she did not testify it would be in the children's best interests to allow Wyatt visitation.

Counsel for Wyatt stated in the record that visitation was shown to be in the children's best interests in "Brenda Walker's report in the evidence." The report was placed in evidence and considered by the trial court, but is not contained in the record on appeal (it is attached as an appendix to appellee's brief). Her testimony was that she could not say it would be in the children's best interests to have visitation with Wyatt over the objection of Spradling. She did testify that, if Wyatt and Spradling kept their disagreement private, it would be in the children's best interests to visit Wyatt.

The trial court also considered a report from the Menninger Foundation. That report is not in the record on appeal. Appellant does attach a copy of a report to her brief that appears to be the report the trial court considered. That report states Spradling had a rigid, uncompromising position concerning visitation and, although she claimed Wyatt physically abused her as a child, she was unable to give specific examples and could not recall any childhood memories before the age of twelve. The interviewer stated he attempted to help Spradling identify the distorted reality of the relationship that exists between Spradling and her mother, but was unsuccessful. In order to protect the children from Spradling's adverse reaction, he felt the trial court might have to deny the visitation request. The report seems to us to say that Spradling is taking an unjustifiable position and will not make a good faith effort to work out her problems with Wyatt.

Here, the trial court heard evidence from two experts that it is in a child's best interests to have a loving relationship and visitation with grandparents. The trial court then could consider the advantages and disadvantages in this case. The court heard evidence that the Spradling home had marital problems, the three children have three different fathers, two of the children had lived in Wyatt's home for some thirteen months (a total of three occasions) and Wyatt had babysat for them on other occasions. In *Com. ex rel. Goodman v. Dratch*, 192 Pa. Super. 1, 159 A.2d 70 (1960), the trial court approved visitation by a grandmother who had resided for one year with the child despite testimony from a psychologist that her visitation would be detrimental to the child's health.

In Note, *Visitation Rights Of A Grandparent Over The Objection of A Parent: The Best Interests of The Child*, 15 J. Fam. L. 51, 61 (1976), the author stated:

"Although it is indisputable that conflict among the child's authority figures is a disruptive factor in his development, it is much less clear that parents should automatically be entitled to complete and final victory over any alleged adversaries. For example, a parent could effectively terminate all visitation between his child and third parties simply by provoking a quarrel. Grandparents, even though not willing participants in the dispute, would nonetheless receive judicial treatment as troublemakers. The very premise, that the best interests of the child are furthered by a decision in favor of his parents, may be of doubtful validity. Association with his grandparents might prove far more valuable to him than would exclusive association with only those outsiders whose views are homogeneous with the parents' outlook."

Here, mutual affection between the children and their grandmother was demonstrated. We are unable to say the trial court abused its discretion or erred in allowing visitation. Obviously, the trial court should monitor the situation to see that visitation remains in the children's best interests, but need not allow an uncompromising or uncooperative mother to defeat what the trial court believes to be in the children's best interests.

### 3. Attorney Fees and Costs

K.S.A. 38-131 provides:

"Costs and reasonable attorney fees shall be awarded to the respondent in an action filed pursuant to K.S.A. 38-129 *et seq.* unless the court determines that justice and equity otherwise require."

In this case, the trial court ordered that the parties pay their own attorney fees and made no findings as to justice or equity. The statute mandates that the petitioner pay the respondent's attorney fees. Thus, the trial court erred in ordering the parties to pay their own attorney fees without making findings that justice and equity required otherwise.

Because petitioner's original motion for visitation was filed pursuant to K.S.A. 1988 Supp. 60-1616, Wyatt contends K.S.A. 38-131 does not apply to this case. In response to Spradling's challenge to jurisdiction, however, the trial court noted it had jurisdiction of Bobby under K.S.A. 1988 Supp. 60-1616 and of all three children pursuant to K.S.A. 38-129 and the doctrine of parens patriae. Furthermore, Spradling's opening statement and closing argument clearly indicated Wyatt was being held to the burden of proof required by K.S.A. 38-129(a), and the trial court made the specific findings necessary to allow visitation pursuant to K.S.A. 38-129.

Because the legislature clearly intended that the petitioner

pay attorney fees under circumstances such as these, and the trial court made no findings that justice and equity would require otherwise, the court's order that Spradling pay her own attorney fees is reversed. On remand, the trial court should order attorney fees and costs be paid by Wyatt unless it finds justice and equity require otherwise, in which case it can deny attorney fees and costs in whole or in part, depending upon its findings.

Affirmed in part, reversed in part, and remanded with directions.