901 P.2d 770

**Larry RIDENOUR and Hiltrud Ridenour, Petitioners–Appellees,**

v.

**Catherine C. RIDENOUR, Respondent–Appellant.**

No. 15622.

Court of Appeals of New Mexico.

June 2, 1995.

Certiorari Denied July 12, 1995.

Ernesto J. Romero, The Romero Law Firm, Albuquerque, for petitioners-appellees.

Mary L. Vermillion, Albuquerque, for respondent-appellant.

Jon A. Feder, Chairperson, Family Law Section, State Bar of New Mexico, Albuquerque, for amicus curiae.

## OPINION

FLORES, Judge.

Mother appeals the trial court's Order on Petition for Grandparental Visitation. The issues raised on appeal are: (1) whether the Grandparent's Visitation Privileges Act (GVA), NMSA 1978, §§ 40–9–1 to –4 (Repl. Pamp.1994), is constitutional as applied herein; and (2) whether the amount of visitation granted is reasonable and supported by substantial evidence. We affirm.

### FACTS

Grandparents are the paternal grandparents of Child. Parents (Mother and Father) of Child were divorced in July of 1989. Pursuant to a November 29, 1989, stipulated order, Mother and Father entered into a joint custody arrangement, with Mother providing the primary residence for Child. The

stipulated order provided that Child, prior to starting school, had eight days visitation per month with Father—with the proviso that such visitation be in the company of one of the Grandparents. Following the divorce, Mother and Child lived with Grandparents for approximately six months.

Further, after Parents' divorce, Father had very little contact with either Child or Grandparents. After Child started school in September 1992, no new time-sharing plan was discussed or developed by the Parents. Father continued to have very little contact with either Child or Grandparents. After starting school in September 1992, Child spent two to four days a month with Grandparents.

On December 27, 1993, the relationship between Mother and Grandparents deteriorated. Mother accused Grandmother of sexual abuse, and Grandparents accused Mother of abandonment, lack of supervision, substance abuse, and other misbehavior. Mother terminated all contact between Child and Grandparents. Grandparents subsequently filed a Petition for Grandparental Visitation. The trial court entered findings of fact and conclusions of law, and the Order on Petition for Grandparental Visitation from which Mother appeals.

## DISCUSSION

The applicable statute, Section 40–9–2(A)–(F) provides in pertinent part that grandparents may file a visitation petition when one of the following threshold requirements has been met: the filing of a judgment of dissolution of marriage, legal separation, or the existence of a parent-child relationship pursuant to the Uniform Parentage Act; one or both parents are deceased; a child under six years resided with a grandparent at least three months; a child over six years resided with a grandparent at least six months; or adoption proceedings are involved.

Once one of the foregoing threshold requirements is met, the trial court shall assess the best interests of the child; the prior interaction between the child and grandparent, the prior interaction and present relationship between the grandparent and each parent of the child, and the time-sharing or visitation arrangements that were in place prior to the filing of the petition. *See* § 40–9–2(G)(1)–(5).

Issue 1: Whether Enforcement of the GVA Unconstitutionally Infringes on Mother's Fundamental Rights

■ Mother argues that enforcement of the GVA is an unconstitutional intrusion of Mother's right to raise Child as she sees fit because there has not been any threshold showing of harm to Child requiring the exercise of the State's parens patriae protective mode. Clearly, case law recognizes parents' fundamental constitutional right to raise their children. *See Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982) ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest."); *Griffin v. Strong,* 983 F.2d 1544, 1547 (10th Cir.1993) (right to family integrity embodied in the Fourteenth Amendment); *Jaramillo v. Jaramillo,* 113 N.M. 57, 64, 823 P.2d 299, 306 (1991) (refers to *Santosky* and case law which indicates that the "freedom of personal choice includes 'the freedom of a parent and child to maintain, cultivate, and mold their ongoing relationship' ") (quoting *Franz v. United States,* 707 F.2d 582, 595 (D.C.Cir.1983)); *Oldfield v. Benavidez,* 116 N.M. 785, 790, 867 P.2d 1167, 1172 (1994) (recognizes the right to family integrity).

■ However, case law also establishes that parents' right to raise their children is not beyond regulation in the public interest. *See Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978) (the state may impose reasonable regulations that do not substantially interfere with parents' fundamental rights); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). New Mexico's appellate courts have consistently recognized the State's parens patriae power to act in the best interests of the children. *See, e.g., Oldfield,* 116 N.M. at 791, 867 P.2d at 1173 (discusses parens patriae power in context of child neglect and abuse); *In re Adoption of Francisco A.,* 116 N.M. 708, 713, 866 P.2d 1175, 1180 (Ct.App.1993) (refers to cases that rely on the State's parens patriae power and

the district court's equitable powers when dealing with children; concludes that foster parents, or someone who has acted in a custodial or parental capacity, may be entitled to visitation following adoption); *Rhinehart v. Nowlin*, 111 N.M. 319, 325, 805 P.2d 88, 94 (Ct.App.1990) (in some situations it may be in the child's best interests to allow visitation by a stepparent who had not adopted the child following divorce from the child's natural parent). Similarly, out-of-state courts have also recognized a state's parens patriae power to act when merited by a child's best interests. *See, e.g., Spradling v. Harris*, 13 Kan.App.2d 595, 778 P.2d 365, 367 (1989) (the State's parens patriae power gave it the power to recognize grandparent visitation rights when in the child's best interests); *Roberts v. Ward*, 126 N.H. 388, 493 A.2d 478, 481 (1985) (the court, as an instrument of the state, may use its parens patriae power to decide whether the welfare of the child warrants court ordered visitation). *See generally* Annotation, *Grandparents' Visitation Rights*, 90 A.L.R.3d 222, 232 (1979).

An acknowledgment that parents' right to raise their children is not beyond regulation accommodates and balances the interests of the grandparents, the state, and the children. For example, apart from parents' fundamental rights, case law also recognizes the rights of extended family members. *See, e.g., Moore v. City of E. Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (in a zoning dispute, the Court recognized a grandmother's place as part of the extended family); *see also Herndon v. Tuhey*, 857 S.W.2d 203, 209 (Mo.1993) (en banc) ("[G]randparents are members of the extended family whom society has traditionally recognized as playing an important role in the raising of their grandchildren."); *Lockhart v. Lockhart*, 603 N.E.2d 864, 866 (Ind.Ct.App. 1992) (recognizes the competing interests of "the rights of [the] parents to raise their children as they see fit and [the] rights of the grandparents to participate in the lives of their grandchildren"); *People ex rel. Sibley v. Sheppard*, 54 N.Y.2d 320, 326–27, 445 N.Y.S.2d 420, 423, 429 N.E.2d 1049, 1052 (1981) (under certain circumstances, grandparents should have continuing contacts with

children's development if it is in the children's best interests).

In addition, balanced against the parents' right to raise their children are the best interests and rights of the children. New Mexico case law establishes that parents' rights are secondary to the best interests and welfare of the children. *See In re Adoption of J.J.B.*, 119 N.M. 638, 652, 894 P.2d 994, 1008 (1995) [No. 21,864, slip. op. at 28 (N.M. Mar. 30, 1995) ] ("Custody based upon the biological parent-child relationship may be at odds with the best interests of the child. When that happens, the best interests of the child must prevail."); *Oldfield*, 116 N.M. at 790, 867 P.2d at 1172 ("Although parents have certain rights regarding their children, the children also have certain fundamental rights which often compete with the parents' interests."); *In re Adoption of Francisco A.*, 116 N.M. at 714, 866 P.2d at 1181 ("Although granting visitation to a nonparent does affect a parent's custody rights, ... [i]t is well established in New Mexico that parents do not have absolute rights in their children; rather, parental rights are secondary to the best interests and welfare of the children."); *In re Samantha D.*, 106 N.M. 184, 186, 740 P.2d 1168, 1170 (Ct.App.) (any right of the parents is secondary to the best interests and welfare of the children), *cert. denied*, 106 N.M. 174, 740 P.2d 1158 (1987); *see also Roberts*, 493 A.2d at 481 ("The realities of modern living ... demonstrate that the validity of according almost absolute judicial deference to parental rights has become less compelling as the foundation upon which they are premised, the traditional nuclear family, has eroded"; adopts the standard of the welfare and best interests of the child above everything).

■ Case law also recognizes the state's compelling interests in the welfare of its children. *See Santosky*, 455 U.S. at 766, 102 S.Ct. at 1401–02 (the state has parens patriae interest in the welfare of children); *Oldfield*, 116 N.M. at 791, 867 P.2d at 1173 (the state has a compelling interest in the health, education, and welfare of children); *Sketo v. Brown*, 559 So.2d 381, 382 (Fla.Dist.Ct.App. 1990) ("The state has a sufficiently compelling interest in the welfare of children that it

can provide for the continuation of relations between children and their grandparents under reasonable terms and conditions so long as that is in the children's interest.").

The constitutionality of legislation authorizing grandparent visitation has been considered by a number of other jurisdictions. A majority of courts which have considered this issue have rejected similar or related constitutional challenges. *See Sketo*, 559 So.2d at 382; *Bailey v. Menzie*, 542 N.E.2d 1015, 1020 (Ind.Ct.App.1989); *Spradling*, 778 P.2d at 367; *King v. King*, 828 S.W.2d 630, 632 (Ky.), *cert. denied*, 506 U.S. 941, 113 S.Ct. 378, 121 L.Ed.2d 289 (1992); *Herndon*, 857 S.W.2d at 209; *R.T. v. J.E.*, 277 N.J.Super. 595, 650 A.2d 13, 15 (Ch.Div.1994); *Sheppard*, 429 N.E.2d at 1052. *But see Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769, 773–74 (1995) (declaring Georgia's grandparent visitation statute unconstitutional under both state and federal constitutions); *Steward v. Steward*, 111 Nev. 295, 890 P.2d 777, 780–81 (1995) (holding that absent presentation of clear and convincing evidence showing otherwise, court should not interfere with decision of natural parents concerning grandparent visitation).

■ We find the reasoning adopted by the majority of the courts that have considered similar constitutional challenges applicable here, namely, that an act authorizing the trial court to permit grandparent child visitation withstands state and federal constitutional challenges if allowance of such visitation is shown to be in the best interest of the child.

■ Thus, although the State's enforcement of the GVA does impact Mother's right to raise Child, *see In re Adoption of Francisco A.*, 116 N.M. at 714, 866 P.2d at 1181 (recognizing that granting visitation to a nonparent affects a parent's custody rights), we hold that the intrusion is not a substantial interference and is thus an appropriate mechanism by which the State may balance the parties' competing interests. *See, e.g., Zablocki*, 434 U.S. at 386, 98 S.Ct. at 681 (the state may impose reasonable regulations that do not substantially interfere with the parents' fundamental rights); *R.T.*, 650 A.2d at 15 (through the power of regulation, "the statute seeks to balance the competing inter-

ests of grandparents, grandchildren, and parents"); *Herndon*, 857 S.W.2d at 209–10 (grandparent visitation is a minimal intrusion on the family relationship, protects the interests of parents and children, and is not a substantial infringement on a family relationship); *Bailey*, 542 N.E.2d at 1020 (grandparent visitation interferes with a parent's liberty interest only to observe the state's parens patriae duty to promote the best interests of the child).

Issue 2: Whether the Amount of Visitation Granted is Reasonable and Supported by Substantial Evidence

■ Mother contends that the trial court's application of the GVA is an unconstitutional infringement on her fundamental rights in that the amount of visitation awarded is excessive. We review the trial court's decision under a substantial evidence and abuse of discretion standard. *See Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984) (in considering a substantial evidence claim, this Court views the evidence in the light most favorable to the result below, resolving all conflict and indulging in all inferences in favor of the trial court's decision); *Rhinehart*, 111 N.M. at 330, 805 P.2d at 99 ("An abuse of discretion occurs when the trial court's ruling is clearly against logic and the effect of facts and circumstances."); *Jeantete v. Jeantete*, 111 N.M. 417, 419, 806 P.2d 66, 68 (Ct.App.1990) ("Whether the trial court erred in denying or modifying a child custody or visitation decree is reviewed on an abuse of discretion standard[;] . . . [i]n resolving competing parental custodial claims or questions involving child visitation, the best interests of the child must guide the hand of the court." (citations omitted)).

■ We note that in applying the GVA, there is no presumed beneficial relationship between grandparents and grandchildren; rather, visitation is appropriate only after grandparents have met one of the threshold factors, *see* § 40–9–2(A)–(F), and presented evidence to show, among other factors, that visitation is in the child's best interests. *See* § 40–9–2(G)(1)–(5). Thus, grandparents, in

seeking application of the GVA, have the burden to show that visitation is appropriate. *See Weybright v. Puckett,* 262 Ill.App.3d 605, 200 Ill.Dec. 18, 20, 635 N.E.2d 119, 121 (1994) (grandparent must show that it is in best interest of grandchild that visitation be granted); *see also In re Adoption of Francisco A.,* 116 N.M. at 714, 866 P.2d at 1181 (in context of granting visitation to a nonparent, indicates that if at some time the visitation is no longer in the child's best interests, the visitation may be reconsidered).

In the present case, the trial court allowed the following visitation to Grandparents: every other weekend from Friday afternoon until Sunday at 7:00 p.m.; two consecutive weeks per summer, with Mother having Friday through Sunday visitation during the weekend between the two-week period; in lieu of the two-week summer vacation, a four-week vacation in the summer of 1995, provided that Grandparents give Mother not less than thirty days advance written notice; each Easter from noon Easter eve until noon on Easter Sunday; and each Christmas eve day beginning at noon until noon on Christmas day.

Findings in support of the foregoing determination include: from 1988 until December 27, 1993 (at which time Mother terminated Child/Grandparents contact), Grandparents had visitation with Child for up to eight days (overnight) each month; Grandparents always have been active in Child's life (including vacations, recreational activities, tutoring, exposure to German); Child has relationships with his extended family on Grandparents' side of the family; post-divorce, Child and Mother lived with Grandparents six continuous months before moving; Grandparents' visitation does not interfere with Parents' time-sharing arrangement because Father does not exercise his visitation; the lack of contact with Grandparents would result in psychological harm to Child; and it is in Child's best interests to allow visitation because of the interaction between Child and Grandparents, the interaction between Grandparents and Parents, and because of the time-sharing arrangements prior to Mother's December 27, 1993 termination of Grandparent/Child contact.

There is evidence to support each of the trial court's findings, and the court's granting grandparent visitation in the instant case is reasonable and does not constitute an abuse of discretion. *See, e.g., Cockrell v. Sittason,* 500 So.2d 1119, 1121 (Ala.Civ.App. 1986) (children and father had been living with grandparents for over a year; no abuse of discretion where trial court awarded grandparents visitation one weekend each month, two weeks during the summer, and on certain holidays); *cf. Sketo,* 559 So.2d at 383 (grandmother had only occasionally visited grandchildren; abuse of discretion found when grandmother was granted visitation every other weekend, one day either before or after major holidays, and one week every summer). In regard to the visitation for holidays in this case, we note that the facts indicate that Mother always allowed Grandparents' visitation to include every Christmas eve and major holiday. We also note that Child expressed fear of being cut-off from Grandparents. *See, e.g., Roberts,* 493 A.2d at 481 ("It would be shortsighted indeed, for this court not to recognize the realities and complexities of modern family life, by holding today that a child has no rights, over the objection of a parent, to maintain a close extra-parental relationship which has formed in the absence of a nuclear family."). Moreover, we do not consider the trial court's finding of "psychological harm" to be without merit. Rather, we view such finding as part of the trial court's determination that the lack of Grandparent visitation would not be in Child's best interests. We also note that we do not consider Grandparents' visitation to be a substitution for Father's unused visitation. Factors affecting Grandparents' visitation rights are separate and distinct from Father's visitation rights; the two are not comparable.

Lastly, we point out that the Family Law Section of the State Bar filed an extensive amicus brief in this case. The Court found the brief of material assistance in the instant case and the panel is appreciative of the assistance provided by Amicus on appeal.

## CONCLUSION

In circumstances such as the present, we hold that application of the GVA as to Child

and Mother here is not unconstitutional and is an appropriate exercise of the State's parens patriae power. While acknowledging Mother's fundamental right to raise Child as she sees fit, we also recognize that Mother's right to raise Child is not beyond regulation. In the present case, application of the GVA is an appropriate method by which to balance the competing interests of Child, Grandparents, Mother, and the State, while promoting Child's best interests as paramount. We further hold that the amount of visitation did not constitute an abuse of discretion and was supported by substantial evidence. Therefore, we affirm. The parties shall bear their own costs and attorneys' fees on appeal.

**IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.