1997 ME 129

**Nancy BERG**

v.

**Lee–Ann BRAGDON.**

Supreme Judicial Court of Maine.

Argued May 5, 1997.

Decided June 6, 1997.

Dennis L. Jones (orally), Gardiner, for plaintiff.

Peter B. Bickerman (orally), Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

█ [¶ 1] Nancy Berg appeals from the judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) vacating a judgment entered in the District Court (Augusta, *Anderson, J.*) granting to Berg visitation rights with her granddaughter Bianca Rose Badershall. The Superior Court based its ruling on constitutional grounds. Berg

challenges the Superior Court ruling and argues that because Lee–Ann Bragdon, the child's mother, did not challenge the constitutionality of the statute during the trial in the District Court, the issue has not been preserved. Because we agree that the challenge to the constitutionality of the statute has not been preserved, we vacate the judgment of the Superior Court.

[¶ 2] Berg filed a verified petition dated December 15, 1994, for grandparent visitation rights with Bianca pursuant to the Grandparents Visitation Act, 19 M.R.S.A. §§ 1001–1004 (Supp.1996). Roger Badershall and Bragdon are the natural parents of Bianca, and Bragdon is the adopted daughter of Berg. Bianca was born on February 13, 1991. Berg testified that when Bianca was a few months old, she would baby-sit her about three nights a week while Bragdon operated her dance studio located in the basement of Berg's house. Berg stated that Bragdon and Badershall took two trips during Bianca's first year, one for a couple of days and the other for two weeks, and that Berg cared for Bianca during those times. Berg had a crib, highchair, walker, food, clothes, and a separate room for Bianca at her house. When Berg could not care for Bianca, Berg's mother, Yvon Doyon, who lived across the street, would help with Bianca's care. The family spent holidays together, and Berg also took Bianca to one or two medical appointments. Other witnesses testifying at the hearing corroborated Berg's testimony about the amount of time that she spent with Bianca.

[¶ 3] Bragdon disputed the amount of time that Berg spent with Bianca and stated that her grandmother, Doyon, and not her mother, was the primary day-care provider. Bragdon stated that the only major contact between Berg and Bianca was during holidays. Bragdon testified that her mother did not provide significant baby-sitting except for a ten-day vacation that Bragdon took. She testified that she has never had a good relationship with her mother and that she feels that she is treated differently because she is adopted. Both Berg and Bragdon recounted two altercations involving themselves and Bragdon's husband Reginald, although they disagreed as to who was at fault. The alter-

cations involved arguments over Bianca and police interventions to quiet the situation.

[¶ 4] Brian Rines, a psychologist, testified that he interviewed Bragdon in January of 1994 at a time when Bragdon was involved in a dispute with Badershall, who was never married to Bragdon, regarding Badershall's visitation with Bianca. He stated that Bragdon told him that Berg frequently took care of Bianca and that Doyon was the supervisor of the visitation and was back-up for the daytime coverage. He stated that he interviewed Bragdon again in March of 1995 and that at that time she attempted to downplay the amount of time that Berg spent with Bianca. Rines interviewed Bianca alone, and she told him that she wanted the situation to be like before when she spent time with her grandmother. Rines testified that in his opinion, it would be in Bianca's best interest for her relationship with her grandmother to continue. Rines stated, however, that possible harm could come to the child from the rift between Berg and Bragdon and their failure to realize and address problems surrounding their relationship. Bianca told Rines that the fighting scared her. When Rines suggested future consultations with Bianca, Bragdon told him that Bianca was uncomfortable having any further discussions with him.

[¶ 5] The court determined the Grandparents Visitation Act to be applicable and concluded that it was in Bianca's best interest for the grandmother to have visitation. The court acknowledged that the visitation would cut into both parents' time albeit in an insignificant fashion. The court ordered visitation of Bianca with Berg each Wednesday from 3 p.m. to 7 p.m., and every other Saturday from 9 a.m. to 3 p.m. The written order signed by the court did not contain factual findings addressing the statutory criteria. See 19 M.R.S.A. § 1003(2) (Supp.1996). Neither Bragdon nor Badershall, however, requested that the court make any furter written findings of fact.

[¶ 6] On October 26, 1995, Berg filed a motion for contempt alleging that no visitation had taken place. On November 3, 1995, Bragdon filed objections to the motion as well as a countermotion to alter the visitation

schedule. On November 13, 1995, the same day she filed a notice of appeal to the Superior Court from the entry of the original visitation order, Bragdon filed an amendment to her objections challenging, for the first time, the constitutionality of the Grandparents Visitation Act. The court (*Perry, J.*) subsequently concluded that the judgment would be stayed pending appeal pursuant to M.R. Civ. P. 62(a), dismissed the contempt motion "as premature," and additionally decided that it was without authority to act at that time on Bragdon's motion for modification pending the appeal.

[¶ 7] On September 24, 1996, the Superior Court, acting in its capacity as an intermediate appellate court, concluded that the trial court did not abuse its discretion or commit clear error in awarding Berg visitation with Bianca pursuant to the statutory criteria. The court rejected Berg's contention that the issue had not been preserved, however, and addressed the constitutionality of the Grandparents Visitation Act, concluding that it was unconstitutional as applied in this case because the statute did not require a finding of harm to the child before visitation with a grandparent was ordered. In addition, the court concluded that for the statute to be constitutional, the statutory factors would have to be proved by clear and convincing evidence. Berg filed this appeal.

## I.

[¶ 8] Berg contends both that the Superior Court erred in finding the Grandparents Visitation Act unconstitutional and in addressing the act's constitutionality because Bragdon failed to preserve the issue in the trial court. We note that courts from other jurisdictions have reached varied conclusions on the constitutionality of their respective grandparent visitation acts.[1] Because we agree with Berg that the constitutional issue was not adequately preserved for appellate review, we must vacate the judgment of the Superior Court based, as it is, on the act's unconstitutionality.

[¶ 9] We have stated that "issues raised for the first time on appeal are generally unpreserved." *Scott v. Lipman & Katz, P.A.,* 648 A.2d 969, 974 (Me.1994). We have applied this rule consistently whether the alleged right is constitutional or based on the common law. *See McAfee v. Cole,* 637 A.2d 463, 466–67 (Me.1994) (failure to seek leave to amend complaint); *Wright v. Saco School Dep't,* 610 A.2d 257, 258 (Me.1992) (equal protection and due process); *Cyr v. Cyr,* 432 A.2d 793, 797–98 (Me.1981) (alleged constitutional issue regarding right of children to guardian ad litem in custody action); *Salamone v. City of Portland,* 398 A.2d 49, 51 (Me.1979) (due process). In *Teel v. Colson,* we stated that:

> The reason for the rule is that a contrary rule of appellate procedure would deprive the trial justice of the opportunity to rule on the issue raised for the first time on appeal and deny the appellate court the trial court's decision thereon made in the atmosphere of the trial, with [the court's] informed thinking on the matter. It would often times present issues at the appellate level, where the necessary subsidiary facts in support thereof have not been fully developed for a proper determination on appeal.

---

1. *See Spradling v. Harris,* 13 Kan.App.2d 595, 778 P.2d 365 (1989) (statute constitutional); *King v. King,* 828 S.W.2d 630 (Ky.1992) (same); *Herndon v. Tuhey,* 857 S.W.2d 203 (Mo.1993) (en banc) (same); *Ridenour v. Ridenour,* 120 N.M. 352, 901 P.2d 770 (Ct.App.1995), *cert. denied,* 120 N.M. 68, 898 P.2d 120 (1995) (same); *R.T. v. J.E.,* 277 N.J.Super. 595, 650 A.2d 13 (Ch. Div. 1994) (constitutional but using rational relation test); *Michael v. Hertzler,* 900 P.2d 1144 (Wyo. 1995) (constitutional); *Campbell v. Campbell,* 896 P.2d 635 (Utah.Ct.App.1995) (constitutional); *compare Beagle v. Beagle,* 678 So.2d 1271 (Fla. 1996) (statute unconstitutional under Florida Constitution); *Brooks v. Parkerson,* 265 Ga. 189,

454 S.E.2d 769 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995) (unconstitutional); *Hawk v. Hawk,* 855 S.W.2d 573, 582 (Tenn.1993) (same but only applying State constitution). According to one court, the "vast majority of courts that have addressed the constitutionality of grandparent visitation statutes authorizing visitation if in the best interest of the child, have upheld these statutes as constitutional." *Campbell v. Campbell,* 896 P.2d at 643 n. 18. *See also Steward v. Steward,* 111 Nev. 295, 890 P.2d 777 (1995) (requiring clear and convincing evidence when both divorced parents object to visitation).

396 A.2d 529, 534 (Me.1979) (citation omitted).

[¶ 10] Bragdon raised the constitutional issue for the first time in an amended objection to an ancillary post-trial motion that subsequently was dismissed by the court following Bragdon's appeal of the underlying order. Consequently, the trial court was entirely deprived of the opportunity of ruling on this issue, and we are deprived of the trial court's "informed thinking on the matter" made in "the atmosphere of the trial." Moreover, in ruling on an as applied constitutional challenge, a trial court's factual findings and ultimate legal conclusion depend on its determinations regarding the credibility of the witnesses. The trial court, and not an appellate court, is the appropriate arbiter of the credibility of witnesses' testimony and the weight of evidence. *See Qualey v. Fulton*, 422 A.2d 773, 776 (Me.1980) ("The trial court has the opportunity to see and hear the witness whereas an appellate tribunal is restricted to a consideration of the cold, written record of the testimony."); *Young v. Witham*, 75 Me. 536, 537 (1884) ("Often there are things passing before the eye of a trial judge that are not capable of being preserved in the record. A witness may appear badly upon the stand and well in the record"). The issue of the constitutionality of the Grandparents Visitation Act is not properly before us at the present time.[2]

**2.** We have articulated certain exceptional circumstances in which addressing an unpreserved issue would be appropriate for an appellate court. *See Scott v. Lipman & Katz, P.A.*, 648 A.2d 969, 974 (Me.1994) (unpreserved issue addressed because no further fact finding was required, and the error is apparent on the face of the record."); *Teel v. Colson*, 396 A.2d at 534 (application of the general rule "would obviously result in a plain miscarriage of justice....") The decision of the District Court does not result in a plain miscarriage of justice compelling us to address the unpreserved issue.

**3.** Bragdon does not challenge the court's determination that there is a sufficient relationship between Berg and Bianca to meet the requirement of 19 M.R.S.A. § 1003(1–A)(C).

**4.** Section 1003(2) provides that in making the best interest determination, the court shall consider the following factors:

## II.

[¶ 11] Bragdon contends in the alternative that the trial court committed clear error and abused its discretion in making the factual determinations it made in this case and concluding that visitation was appropriate. Bragdon argues that because her relationship with Berg has deteriorated, forced visitation between Bianca and Berg is not in Bianca's best interest. Moreover, Bragdon argues that the court erred by failing to require Berg to prove that visitation would not significantly interfere with the parent-child relationship.

[¶ 12] The act provides for the court to make several findings before it may grant visitation rights to a grandparent. Initially, the court must "determine on the basis of the petition and the affidavit whether it is more likely than not that there is a sufficient existing relationship [between the grandparent and the child] or, if a sufficient relationship does not exist, that a sufficient effort to establish one has been made." 19 M.R.S.A. § 1003 (1–A)(C) (Supp.1996).[3] On making that finding and holding a hearing, the court "may grant a grandparent reasonable rights of visitation or access to a minor child upon finding that rights of visitation or access would be in the best interest of the child and would not significantly interfere with any parent-child relationship or with the parent's rightful authority over the child." 19 M.R.S.A. § 1003(2).[4] In addition, section

**A.** The age of the child;
**B.** The relationship of the child with the child's grandparents, including the amount of previous contact;
**C.** The preference of the child, if old enough to express a meaningful preference;
**D.** The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;
**E.** The stability of any proposed living arrangements for the child;
**F.** The motivation of the parties involved and their capacities to give the child love, affection and guidance;
**G.** The child's adjustment to the child's present home, school and community;
**H.** The capacity of the parent and grandparent to cooperate or to learn to cooperate in child care;
**I.** Methods of assisting cooperation and resolving disputes and each person's willingness to use those methods;

1003(3) provides that "[t]he court may modify or terminate any rights granted under this section as circumstances require." 19 M.R.S.A. § 1003(3).

 [¶ 13] The court in this case found that visitation with Berg was in Bianca's best interest. In reviewing the testimony, the court stated on the record that it did not find credible the argument that the events that occurred between the mother and grand-mother would make the child afraid to ever see her grandmother. The court further stated that it did not anticipate that visitation would have any bad effects on the child. The court also acknowledged that although both parents' time with Bianca would be affected by the order, the intrusion was not signifi-cant. Although the court's written order did not specifically address whether the parent-child relationship or the parent's rightful au-thority over the child would be significantly affected, criteria set out by the statute, Brag-don requested no further findings of fact regarding these issues. When a party fails to make that request, we assume that the court made all the findings necessary to sup-port its conclusions. *Huff v. Huff*, 444 A.2d 396, 399 (Me.1982). There is no clear error in the court's findings that Bianca's visitation with her grandmother would not significantly interfere with the parent-child relationship or the parent's rightful authority over her child and would be in Bianca's best interest.

The entry is:

Judgment vacated. Remanded to the Su-perior Court for entry of a judgment affirm-ing the judgment of the District Court.

**J.** Any other factor having a reasonable bear-ing on the physical and psychological well-

being of the child.