Shirley KELLER, Special Administrator of the Estate of Gilbert W. Keller, deceased, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 89–2359.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1990.

Decided March 26, 1991.

Daniel E. Goldberg, Hope K. Olson, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., for plaintiff-appellant.

Stephen J. Liccione, Asst. U.S. Atty., Milwaukee, Wis., Michael C. Messer, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before CUDAHY and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Gilbert Keller applied for social security disability benefits. After a hearing, the ALJ found him disabled, although he reserved for later investigation a suggestion that Keller might actually be engaging in substantial gainful activity. The Appeals Council remanded and directed the ALJ to obtain certain investigative reports and to resolve all issues. The ALJ obtained the material referred to, supplying copies to Keller's counsel for comment, but did not hold a second hearing, deeming the hearing waived. He found that Mr. Keller had been working as a bartender and operator of a tavern and was not disabled. The Appeals Council denied review, and the district court affirmed. Mr. Keller died before the notice of appeal was filed, and his surviving spouse, Shirley Keller, who was appointed as special administrator of his estate, was substituted as the plaintiff-appellant in this case. Mrs. Keller appealed.

The issues are (1) whether the investigative reports constitute substantial evidence supporting the ALJ's finding of substantial gainful activity and (2) whether Mr. Keller's counsel waived a second hearing.

## BACKGROUND

Mr. Keller suffered a right hamstring injury on June 12, 1984, when he was sixty years old. He returned to work on August 15, 1984, but reinjured his leg on October 1, 1984, and never returned to his job. Mr. Keller had been a grocery warehouse laborer for twenty-two years prior to his injury.

On September 6, 1985, Mr. Keller filed his application for disability benefits. At the hearing, on March 24, 1986, Mr. and Mrs. Keller and a vocational expert testified. Reports from two doctors were included in the record considered by the ALJ. In January, 1985, Dr. Stewart examined Mr. Keller in connection with his worker's compensation claim. Dr. Stewart concluded that although Mr. Keller's injuries may have aggravated his pre-existing arthritis, he had recovered sufficiently to return to work immediately. Dr. Shovers was Mr. Keller's treating physician and treated him for his injury from June, 1984, to August, 1985. Dr. Shovers frequently noted that Mr. Keller was not yet able to return to work and in his final report said that Mr. Keller's condition had plateaued and that his arthritis had worsened significantly as a result of his injuries at work. The ALJ relied on Dr. Shovers' reports in making his

initial determination that Mr. Keller was disabled.

Dr. Shovers' report also contains a notation from July 18, 1985, that his analysis might have differed if investigative reports which had been called to his attention were true:

Telephone call from GAB Insurance. They have had a private investigator watching him since March who reports that he works well in his tavern and he does not limp. He has been followed to the clinic and limps when he comes in and when he goes out and then stops limping. Discussed the situation with the adjustor and I would have to say, if this is true and he has been exaggerating his symptoms in front of me, that he plateaued at least in April of 1985 and is presently subject only to the underlying arthritis in his knee which does not require treatment at this time.

Administrative Record at 111. This notation was the only reference before the ALJ to Mr. Keller's work at the tavern. On the basis of this notation, the ALJ asked Mr. Keller about his work at the tavern. Mr. Keller explained that although he spent up to eight hours a day at his wife's tavern, he worked only when his wife was not available and he did none of the bookkeeping, banking, or handling of the money. The ALJ did not find this testimony to be credible:

The self-serving testimony of the claimant and his wife that the claimant does essentially no work that could be construed as substantial gainful activity in the tavern business was not persuasive. The undersigned finds it difficult to believe that the claimant sits in the tavern for eight hours every day and does essentially nothing to help his wife in the business other than conversing with the customers and occasionally ringing something up on the cash register. However, the record contains insufficient evidence at this time to show whether or not the claimant is engaging in substantial gainful activity in his wife's business.

Administrative Record at 24.

After the Appeals Council remanded the case to the ALJ, the ALJ subpoenaed the insurance company's records referred to in Dr. Shovers' notation. The records contain investigative reports which report that Mr. Keller frequently worked in his wife's tavern. The reports cover two periods. During the first period, March 19 to April 1, 1985, one investigator visited the tavern four times, and Mr. Keller was bartending during each visit. The visits lasted from one-and-a-half to three hours. The investigator also observed Mr. Keller bowling for two hours. The investigator never saw Mr. Keller demonstrate any pain, discomfort, or obstruction of movement other than that which was clearly linked to his obesity.

During the second period, May 21 to June 7, 1985, two investigators visited the tavern a total of six times, and Mr. Keller was bartending during five of these visits. Each visit was approximately two hours long, and on only one occasion did Mr. Keller seem to be in any pain. On that occasion Mr. Keller was initially walking normally, but he started limping when an employee of Mr. Keller's former employer came into the tavern. Shortly after the employee left, Mr. Keller started walking normally again. One of the investigators also observed Mr. Keller during a visit to the clinic, and he did not limp or use a cane when he was leaving the clinic.

The investigators' reports are presented objectively. A typical entry says,

On MONDAY, MARCH 25, 1985 at approximately 6:00 PM this investigator entered Keller's Tap. There were seven (7) customers in the bar and Gilbert Keller was tending bar. Mrs. Keller was sitting at the bar talking with a female customer who was sitting next to her.

Mr. Keller, as is his custom had a bar stool sitting behind the bar which he was not sitting on but would lean against it. This investigator again observed NO CANE.

During the time the investigator was in the bar Mr. Keller tended bar that entire time with no help from his wife.

Mr. Keller remained on his feet for periods of fifteen (15) minutes at a time, waiting on patrons. Several times he

went to the cooler, leaned over and reached in for various beverages. He at no time exhibited any signs of discomfort, nor were his movements restricted. Administrative Record at 195.

The records from the insurance company also include a land contract under which the Kellers were purchasing the bar property. This land contract reveals that both Mr. and Mrs. Keller owned the tavern, contrary to Mr. Keller's testimony at the hearing that he had no financial interest in it.

On October 27, 1987, the ALJ issued an opinion holding that the reports were admissible and that they were substantial evidence that Mr. Keller had engaged in substantial gainful activity. The Appeals Council denied Mr. Keller's request that it review the ALJ's holding. Mr. Keller next filed a complaint with the district court; the district court granted the Secretary's motion for summary judgment.

## DISCUSSION

The first issue we must consider is whether the investigative reports are substantial evidence that Mr. Keller engaged in substantial gainful activity.

■ The plaintiff initially claims that the reports cannot be substantial evidence because they are not even admissible. Administrative hearings, however, are not governed by the rules of evidence, 42 U.S.C. § 405(b)(1), and hearsay statements are admissible as long as they are relevant and material. *Myers v. Secretary of Health and Human Services*, 893 F.2d 840, 846 (6th Cir.1990). The reports easily meet this threshold test.

■ Once admitted, hearsay statements may constitute substantial evidence if they have sufficient indicia of reliability. In *Richardson v. Perales*, 402 U.S. 389, 402–406, 91 S.Ct. 1420, 1427–1430, 28 L.Ed.2d 842 (1971), the Supreme Court, in holding that medical reports which were contradicted by live medical testimony could be substantial evidence, used several factors to evaluate the *reliability of the medical reports*: whether the physicians had an interest in the outcome of the case; whether the

reports were based on acceptable medical procedures and tests; whether the reports represented a range of medical specialties; whether the reports reached consistent results; and whether the petitioners had an opportunity to cross-examine the reporting physicians. Courts have adapted these factors to determine the reliability of different types of hearsay. *Johnson v. United States*, 628 F.2d 187, 190–91 (D.C.Cir. 1980) (hearsay testimony of eyewitnesses to automobile accident); *Calhoun v. Bailar*, 626 F.2d 145, 149 (9th Cir.1980) (affidavits which witnesses disavowed at hearing), *cert. denied*, 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981); *School Bd. of Broward County, Fla. v. Department of Health, Education and Welfare*, 525 F.2d 900, 905–07 (5th Cir.1976) (statements of private schools that they had race-based admissions policies).

We think there are comparable factors which suggest reliability of these reports. First, these investigators must have been employed by plaintiff's former employer, or worker's compensation carrier, to make observations of Mr. Keller and report them responsibly. Their employer must have considered them competent. Whatever bias the employer may have had, it wanted facts on which it could rely in paying or contesting worker's compensation. It would want the investigators to be able to testify. Second, the observations are straightforward, of readily observable facts, not requiring technical expertise. Third, there were two series of observations covering reasonable periods of time and a number of different occasions. Fourth, the reports appear to have been made by two people, and are consistent.

Although the reports are unsigned and the insurance company failed to produce names, the identities are presumably available. Mr. Keller could have used the agency's subpoena procedures to learn the identities of the investigators and obtain their · presence for cross-examination if desired.

■ These indicia of reliability are sufficient if Mr. Keller had an opportunity to subpoena and cross-examine the hearsay declarant. Clearly, no cross-examination

occurred, but the Secretary contends the requirement was satisfied because Mr. Keller waived his right to a hearing. The record, however, contains no explicit waiver. Thus, the second issue in this case is whether Mr. Keller was wrongfully denied a second hearing and consequently denied the opportunity to cross-examine the investigators and to offer evidence to rebut their reports.

When the Appeals Council remanded the case on July 18, 1986, it included a direction that "The claimant shall be afforded an opportunity to present further evidence." Administrative Record at 18. On August 8, the ALJ wrote Mr. Keller, with copy to his attorney, acknowledging his request for a hearing and saying they would be notified of the time and place. Administrative Record at 16. The ALJ then subpoenaed the records from the insurance company, and on November 7, he wrote to Mr. Keller's counsel enclosing a copy of the reports "for your comments and/or objections." This letter said nothing about a hearing, although it indicated that the case would be decided on the record if no objection was received. Administrative Record at 210. Mr. Keller's counsel responded objecting to consideration of the unsigned reports. The letter contained no request for a hearing although one of the grounds of objection was that "claimant has no opportunity to confront his accusers." Administrative Record at 212.

No hearing was held. On October 27, 1987, the ALJ rendered his second decision, finding that Mr. Keller had been working as a bartender and operator of a tavern and was not disabled. The decision recited that copies of the investigative reports were submitted to claimant's counsel, and "The claimant was *thereafter* offered the opportunity to appear at a supplemental hearing, but declined." Administrative Record at 13 (emphasis added). The decision contains two other assertions Mr. Keller had waived his right to a hearing. *Id.* at 11, 14–15.

On November 6, Mr. Keller's counsel wrote a letter requesting review by the Appeals Council. He argued extensively his objection to the investigative reports as hearsay. He quoted the ALJ's assertion that he had declined a supplemental hearing. He did not deny it, but explained, "merely appearing at a hearing to offer testimony in response to the contents of [the reports] does not allow the claimant the right to confront his accusers, and cross-examine the investigators." Administrative Record at 7. The explanation was incorrect; Mr. Keller presumably could have obtained the identity of the investigators by subpoena of the insurance company and then subpoenaed the investigators for cross-examination. *Perales,* 402 U.S. at 410, 91 S.Ct. at 1431. The letter also said, "Gilbert Keller was not faced with any credible evidence to rebut in a second hearing appearance. It is therefore improper for the Administrative Law Judge to attribute any weight to Gilbert Keller's refusal to appear at a second hearing." Administrative Record at 8. These statements imply an admission that there was a telephone call or some other informal communication, not of record, fitting the description given by the ALJ.

On March 30, 1988, the Appeals Council denied review. In denying remand for a hearing, the Council wrote, "As you know, the case was remanded and both you and your attorney waived your right to an oral hearing." The plaintiff's brief in the district court disputed neither this claim nor the earlier claims of the ALJ that waiver had occurred. The magistrate's report asserted there had been waiver, and plaintiff's objections to the report again seem to give an explanation for waiver without denying that waiver had occurred.

Even in the briefs before this court the plaintiff did not directly address the assertion that claimant had been offered and declined a hearing. The plaintiff's assertion that the ALJ had never offered a second hearing and that the plaintiff had never waived a hearing was not made until oral argument.

As already pointed out, counsel's failure to deny the assertion of waiver, particularly in requesting review, could reasonably be taken as a tacit admission that the as-

sertion was correct. In any event the argument that claimant had been denied a hearing was waived long before oral argument here. The ALJ's failure to conduct a second hearing is consequently no barrier to recognizing that the investigative reports are substantial evidence.

■ Once we accept the reports as substantial evidence, it is clear that the plaintiff cannot prevail. The activity documented in the reports could be found to constitute substantial gainful activity. Work may be substantial even if it is done on a part time basis. Work may be gainful even though a profit is not realized as long as it is the kind of work that is normally done for pay or profit. 20 C.F.R. § 404.1572. Self-employed people will be deemed to be engaged in substantial gainful activity if their work is comparable to the work of unimpaired people with the same means of livelihood, if their work is worth more than $300.00 a month to the business, or if they receive a substantial income from the business. 20 C.F.R. § 404.1575(a).

In applying these regulations to Mr. Keller, the ALJ determined that Mr. Keller was self-employed and that his work was comparable to the work of unimpaired bartenders. Mr. Keller was self-employed because the contract for the purchase of the tavern proves that Mr. Keller has an interest in the tavern. Because he was self-employed, his apparent failure to make any actual profits does not create a presumption that he was not engaged in substantial gainful activity. The investigative reports indicate that Mr. Keller was able to tend bar as effectively as an unimpaired bartender.

The decision of the district court is AFFIRMED.