John DOE, et al.

v.

**PORTLAND HOUSING AUTHORITY.**

Supreme Judicial Court of Maine.

Argued Sept. 21, 1994.

Decided April 4, 1995.

Jeffrey W. Jones (orally), Jones & Warren, P.A., Scarborough, for plaintiffs.

Robert Dowlut, Fairfax, VA, for amici curiae.

William C. Knowles (orally), Verrill & Dana, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and RUDMAN, JJ.

CLIFFORD, Justice.

John Doe and Jane Doe[1] appeal from the judgment entered in the Superior Court (Cumberland County, *Wernick, A.R.J.*) denying their request to have a provision in their lease with the Portland Housing Authority (PHA) that bans the possession of all firearms on the leased premises declared invalid and unenforceable. Because we conclude that the PHA is a political subdivision within the meaning of 25 M.R.S.A. § 2011 (Supp. 1994), the lease provision, which is based on a resolution enacted by the PHA in 1975, is preempted by section 2011. Accordingly, we vacate the judgment without reaching the constitutional issues advanced by the Does.

The PHA is a municipal housing authority created pursuant to 30-A M.R.S.A. § 4721 (Pamph.1994). *See* 30-A M.R.S.A. §§ 4701-4993 (Pamph.1994).[2] In 1975, the PHA Board of Commissioners passed a resolution prohibiting tenants from possessing firearms on PHA property. The firearms ban provision is a provision in the leases of all PHA tenants.[3] The Does are married and live in Sagamore Village, a PHA development. They have lived in PHA housing since 1981. John Doe is a veteran of the United States Marine Corps, a former federally licensed firearms dealer, and a licensed hunter in Maine. He works nights, and when he is away, Jane, who has used handguns for twenty-seven years and target shoots at a gun club, is fearful for her safety. In violation of the lease agreement, they own and possess hunting rifles and handguns. To remain in their home without the threat of having their lease terminated, the Does brought a declaratory judgment action seeking, *inter alia*, a declaration that the firearms ban in their lease is contrary to the Maine Constitution and therefore is void and unenforceable, and that the lease is preempted by state law regulating firearms.

The trial court found that the lease provision does not violate the sections of the

---

1. The Superior Court allowed the plaintiffs to proceed anonymously.

2. 30-A M.R.S.A. § 4721(1) creates in each municipality a "public body corporate and politic to be known as the 'Housing Authority' of the municipality." The authority is activated if the municipality declares a need for it to carry out "public and essential governmental functions." *Id.* § 4741. The authority is run by its commissioners, *id.* § 4723(1), and the commissioners are appointed by the selectmen or the mayor. *Id.* § 4721(4). The authority has all the powers necessary to carry out its functions, including the power to sue and be sued. *Id.* § 4741. It has the authority to acquire and own property, including the power of eminent domain. *Id.* § 4741(5). Its property is declared to be public property used for essential public and governmental purposes and is exempt from all taxes. *Id.* § 4742(5). A housing authority may be sued pursuant to the Maine Tort Claims Act. *Id.* § 4741(1).

3. The Does's lease agreement with PHA provides, "The Tenant's possession of or display of a firearm upon the premises is prohibited. A violation of this Section is grounds for automatic termination of this Lease."

Maine Constitution relied on the by Does: the right to keep and bear arms,[4] the right to defend life and liberty,[5] or the right to equal protection of the laws.[6] The court also concluded that the ban on the possession of firearms is not preempted by state law and, therefore, upheld the lease provision and denied the Does any relief. This appeal by the Does followed.

■ If the Legislature's preemption of the regulation of firearms includes resolutions enacted by the PHA, then the resolution, and thus the lease provision that flows from it, are void and we need not reach the constitutional issues advanced by the Does. Accordingly, we first address the issue of preemption. Whether the resolution is void depends on whether the PHA is a political subdivision within the meaning of 25 M.R.S.A. § 2011 (Supp.1994). That question is one of law that we review *de novo. See Maine Beer & Wine Wholesalers Ass'n v. State,* 619 A.2d 94, 97 (Me.1993) (statutory interpretation is matter for this Court).

In defending its lease provision and the decision of the Superior Court, the PHA contends, *inter alia,* that its lease provision is not preempted because only orders, ordinances, rules, and regulations of "political subdivisions" are preempted, and the PHA is not an enumerated political subdivision. In addition, it argues that the only purpose of the preemption statute is to make firearms regulation uniform so that hunters traveling through the state will not be subject to different regulations when they cross town lines, and thus, the Legislature did not intend to preempt PHA's lease provision. We disagree.

■ A federal statute preempts a state law when Congress has explicitly stated its intention to preempt state regulation of a certain field. *Rozanski v. A–P–A Transp.,*

*Inc.,* 512 A.2d 335, 339 (Me.1986) (quoting *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 468, 104 S.Ct. 2518, 2522, 81 L.Ed.2d 399 (1984)). Likewise, a state law preempts the regulations or ordinances of constituent political units if the Legislature expresses an intent to preempt regulations in that field. In the present case, the Legislature passed a statute in 1989 that provides, in pertinent part:

> **1. Preemption.** The State intends to occupy and preempt the *entire* field of legislation concerning the regulation of firearms, components, ammunition and supplies.... [A]ny existing or future order, ordinance, rule or regulation in this field of any political subdivision of the State is void.
>
> **2. Regulation restricted.** ... [N]o political subdivision of the State, including, *but not limited to,* municipalities, counties, townships and village corporations, may adopt any order, ordinance, rule or regulation concerning the sale, purchase, purchase delay, transfer, ownership, use, possession, bearing, transportation, licensing, permitting, registration, taxation or any other matter pertaining to firearms, components, ammunition or supplies.

25 M.R.S.A. § 2011 (Supp.1994) (emphasis added).

The preemption statute is not clear on its face as to whether the PHA is a political subdivision. The term "political subdivision" is not defined within the statute, and authorities are not named specifically as one of the enumerated examples of a political subdivision in the statute. *See id.* § 2011(2). It is significant that the statute makes it clear that the recited examples of political subdivisions are nonexclusive. Although the term political subdivision is defined in five other chapters,[7] the different definitions do not

---

4. Me. Const. art. I, § 16.

5. Me. Const. art. I, § 1.

6. Me. Const. art. I, § 6–A.

7. Within the Maine Tort Claims Act, "political subdivision" is defined as:
 any city, town, plantation, county, administrative entity or instrumentality created pursuant

to Title 30–A, chapters 115 and 119, quasi-municipal corporation and special purpose district, including, but not limited to, any water district, sanitary district, hospital district, school district of any type, any volunteer fire association as defined in Title 30–A, section 3151, and any emergency medical service.

14 M.R.S.A. § 8102(3) (Supp.1994) (footnotes omitted). Although a housing authority is not

lead to a consistent conclusion as to whether a municipal housing authority is a political subdivision. *Compare* 22 M.R.S.A. § 2601(7) (1992) (political subdivision defined as municipality, county, district, or any portion or combination thereof) *with* 37–B M.R.S.A. § 703(4) (1989) (authorities are explicitly enumerated as political subdivisions).

Because section 2011 is not clear on its face as to whether an authority is a political subdivision, we look to the legislative history of section 2011 to determine the legislative intent. *See Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994) (when plain meaning of statutory language is ambiguous, we examine other evidence of legislative intent, including legislative history). The legislative history of section 2011 supports the conclusion that the legislature intended to preempt the regulation of firearms by the PHA. *Lewiston Daily Sun, Inc. v. City of Auburn,* 544 A.2d 335, 337 (Me.1988) (courts look to legislative history to resolve ambiguity as to what public entities fall within purview of statute). Although the PHA correctly points out that one purpose of the legisla-

tion is to make firearms regulation uniform so that hunters traveling through the state will not be subject to different regulations in different municipalities, the legislative record reveals that this was not by any means the sole reason for passing that law. In fact, the statement of fact accompanying the statute makes no mention of an intent to protect those who travel from town to town with firearms.

The principal thrust of the preemption statute voiced in the legislative record was to make the regulation of firearms uniform for all residents of Maine. Concern was expressed for laws in different communities imposing waiting periods on the purchase of firearms, different procedures for purchasing ammunition, and the resurrection of an old ordinance in Portland restricting the ability to carry a loaded firearm. Passed on the heels of a constitutional amendment changing Maine's constitutional right to bear arms from a collective to an individual right,[8] section 2011 was enacted to reinforce the amendment and to ensure uniformity in the regulation of guns for all Maine citizens.[9]

---

listed separately as one of the enumerated nonexclusive examples of a political subdivision, because it has broad powers and many of the indicia of a governmental entity, it would appear to be a political subdivision within the meaning of section 8102(3). *See Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 418 (Me.1987) (transit district is quasi municipal corporation as well as special purpose district and thus political subdivision within meaning of section 8102(3)). Perhaps because of this, 30–A M.R.S.A. § 4741(1) provides specifically that a housing authority may be sued pursuant to the Maine Tort Claims Act. Other definitions of political subdivision include "any municipality, county, district or any portion or combinations of 2 or more thereof," 22 M.R.S.A. § 2601(7) (1992) (statutory chapter dealing with water for human consumption); "any municipality, plantation, county, quasi-municipal corporation and special purpose district, including, but not limited to, any water district, sanitary district, hospital district, municipal electric utility and school administrative unit," 30–A M.R.S.A. § 2252 (Pamph. 1994) (law concerning public self-funded pools); *see also* 38 M.R.S.A. § 1651(3) (1989) (statute prohibiting use of polystyrene foam plastic containers and plastic beverage stirrers gives political subdivision "the same meaning set forth in Title 14, section 8102, subsection 3.").

Only in the Maine Civil Emergency Preparedness Act does the definition explicitly refer to authorities. The Act defines political subdivision

as "counties, cities, towns, villages, townships, districts, *authorities,* and other public corporations and entities organized and existing under charter or general law." 37–B M.R.S.A. § 703(4) (1989) (emphasis added).

8. Me. Const. art. I, § 16, amended in 1987, provides that "[e]very citizen has a right to keep and bear arms and this right shall never be questioned."

9. Some of the comments by legislators included:
I am very proud to be a cosponsor of L.D. 994 because I believe that it is time that we guarantee to Maine citizens that all would share equally in the Maine Constitutional protection of the right to keep and bear arms. As we all know, inequity in the application of laws leads to discrimination and disenfranchisement. Legis.Rec. H–784 (1989) (statement of Rep. Rotondi).
With the acceptance of this report, we would put a law in place that would clearly guarantee all citizens of the State of Maine equal protection.... [L]imiting the rights of Maine's citizens clearly violates the spirit of the referendum Constitutional Amendment that was passed in 1987 that upheld our long traditional belief of the right of gun ownership. Legis.Rec. H–780 (1989) (statement of Rep. Kilkelly).
We had a Constitutional Amendment not too long ago which was reaffirmed by the vast

The legislative history is consistent with the statute's expressed intent to "occupy and preempt the *entire* field of legislation concerning the regulation of firearms," and to void any "order, ordinance, rule or regulation in this field." 25 M.R.S.A. § 2011 (emphasis added).

Only two exceptions were made to the Legislature's preemption of firearms regulation, and the PHA's lease provision does not fall within either of them. *See* 25 M.R.S.A. § 2011(3) & (4). Section 2011(3) allows ordinances, orders, rules, or regulations that conform exactly with state law, or that regulate the discharge of firearms. 25 M.R.S.A. § 2011(4) allows a law enforcement agency to regulate the type and use of firearms issued or authorized for use by its employees. There is no mention in the legislative record that firearms regulations like that promulgated by PHA would escape preemption. Instead, the record is replete with statements that the preemption is .sweeping and will make the laws uniform for all Maine citizens.[10] In fact, the Legislature addressed whether municipalities with over 15,000 citizens should be exempted from the preemption, and such an exemption was rejected. A cosponsor of the bill stated that a purpose of the preemption statute was to protect the citizens of large communities from discriminatory firearms regulations, because there

are "law-abiding gun owners in large communities who are often innocent victims of restrictive gun control measures." Legis.Rec. H–784 (1989) (statement of Rep. Rotondi). PHA's lease provision is contrary to the Legislature's intent to ensure that all Maine citizens are treated equally with regard to firearms regulation. Moreover, the governmental entities listed in the statute as political subdivisions are examples only, and non-exclusive. The PHA possesses broad powers consistent with its mission of carrying out "public and essential functions," and has many of the indicia of a governmental entity. *See supra* note 2. All of the foregoing leads to the conclusion that the PHA, a "public body corporate and politic," is a political subdivision within the meaning of section 2011. *See Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 417 (Me.1987) (District, a "body politic and corporate," is governmental entity and political subdivision pursuant to Maine Tort Claims Act).

 The PHA also contends that the United States Housing Act, 42 U.S.C.A. §§ 1437 to 1437aaa–8 (1994), preempts any preemption under state law. It argues that federal law giving municipal housing authorities management responsibilities over their programs, 42 U.S.C.A. § 1437 (1994), indicates an intent on the part of Congress to preempt

majority of the citizens of this state. · This Bill just establishes that state firearms prevention and policy.... I believe [this Bill] is very important and it just reaffirms our Constitutional right to bear arms and establishes a state uniform policy throughout the state.
Legis.Rec. S–898 (1989) (statement of Sen. Matthews).

**10.** Some of the statements by legislators included:

I think if we are going to have laws in this state, they ought to be uniform throughout the state, they shouldn't have separate laws in each community and each town.... [L]et the people bring the request to the Legislature and let us set the laws.
Legis.Rec. S–899 (1989) (statement of Sen. Dillenback).
It is obvious that Maine and Maine's citizens need a uniform firearms law, laws which they can know and upon which they can rely. If towns feel that they need special types of firearms ordinances, firearms powers or if they think that Maine's law needs amending, then

they have a simple solution. They are well represented, they can have their legislators come up to us, present a bill, and we will consider it.
Legis.Rec. H–779 (1989) (statement of Rep. Priest). In fact, Rep. Priest went on to express a goal of avoiding lawsuits such as this one when he stated, "I will submit to you that enactment of this bill will prevent a series of costly lawsuits from taking place to determine whether or not ordinances violate state firearms policy or not." *Id.*
In opposition to the bill, one representative stated:
The purpose of the bill before us today is to strip away community control over the one field surest to strike sparks in a legislative body and that is (a) local control over local laws and (b) those local laws for the purpose of addressing unspecified grievances on the part of a few. This sweeping preemption law would apply equally as you have already heard to all persons whether you live in Berwick, Brunswick, Portland or Stoneham.
Legis.Rec. H–784 (1989) (statement of Rep. Adams).

state law. Section 2011, however, does not conflict with federal law. There are three ways in which a federal law may preempt a state law:

First, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law. Second, even in the absence of express preemptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. Finally, if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and local law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Rozanski*, 512 A.2d at 339 (quoting *Michigan Canners & Freezers Ass'n*, 467 U.S. at 468, 104 S.Ct. at 2522). Until now, Congress has neither expressly nor impliedly preempted the regulation of firearms by states. In addition, the preemption of firearms regulation by the state expressed in section 2011 does not conflict with the Housing Act to the extent that the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* We are unpersuaded that Congress intended to preempt the state's right to provide for the uniform regulation of firearms.

The entry is:

Judgment vacated. Remanded to the Superior Court to enter a judgment declaring that the provision in the Plaintiffs' lease banning the possession of firearms on the leased premises is invalid.

All concurring.