2006 ME 136

**Fern DOWLING**

v.

**BANGOR HOUSING AUTHORITY.**

Supreme Judicial Court of Maine.

Argued: May 8, 2006.
Decided: Nov. 28, 2006.

Carl E. Kandutsch (orally), Pine Tree Legal Assistance, Inc., Bangor, for plaintiff.

Edward W. Gould (orally), Gross, Minsky & Mogul, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, DANA, and ALEXANDER, JJ.

Concurrence/Dissent: LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Fern Dowling appeals from a judgment of the Superior Court (Penobscot County, *Hjelm, J.*) affirming the decision of the Bangor Housing Authority to terminate Dowling's "Section 8" rental subsidy issued pursuant to 42 U.S.C.S. § 1437f (Law Co-op. 2001). Dowling contends that the Authority improperly considered hearsay evidence, and that there is insufficient record evidence to support the Authority's

decision to terminate her rental subsidy. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In 2002, Fern Dowling was approved for participation in the Federal Housing Assistance Payments Program pursuant to the United States Housing Act of 1937, 42 U.S.C.S. §§ 1437–1440 (Law Co-op. 2001), also known as the "Section 8" rental subsidy program. Section 8 participants are low-income families who are eligible for federal rental subsidies. 42 U.S.C.S. § 1437f. Section 8 housing is administered by local housing authorities pursuant to federal statutes and regulations. 42 U.S.C.S. § 1437f(b). The Bangor Housing Authority is one such local authority that administers Section 8 housing.[1] In administering the federal Section 8 program, the Authority enters into contracts with private landlords, owners of existing dwellings, to subsidize the monthly rent of low-income participants. 42 U.S.C.S. § 1437f(b)(1).

[¶ 3] In September of 2003, Dowling entered into an Authority-approved lease agreement with landlord Robert Wortman Sr. to lease a mobile home in a mobile home park in Bangor. The lease with Wortman provided that Dowling's rent included all utilities.

[¶ 4] Dowling had previously signed a document entitled "Things You Should Know," stating that paying any amounts outside the lease provisions is considered fraud, and that if she is required to pay any amounts outside the rent, she must obtain a written explanation for such charges. The document also notified Dowling of her obligation to report any fraud or abuse to the Authority. Even though Dowling knew that the Section 8 program requires that all utilities be included in the rent, she later entered into a side agreement with Wortman, unknown to the Authority, pursuant to which Dowling paid Wortman an additional monthly amount equivalent to the cost of Dowling's electric bill, in exchange for which Dowling moved into a better mobile home than the one she initially contracted to rent. Dowling paid Wortman pursuant to the side agreement from September of 2003 until May of 2004 without informing the Authority.

[¶ 5] In May of 2004, Wortman began forcible entry and detainer proceedings against Dowling pursuant to 14 M.R.S. §§ 6001–6016 (2005) by serving her with a notice to quit the premises. It was then that Dowling first notified Sally McDonald, a Section 8 housing coordinator for the Authority, about her side agreement with Wortman.

[¶ 6] In June of 2004, McDonald notified Dowling by letter that her Section 8 rental subsidy was terminated for noncompliance with Section 8 regulations pursuant to 24 C.F.R. §§ 982.551, 982.552 (2006).[2] Dowl-

---

1. The Authority was created pursuant to 30–A M.R.S. § 4721, and has "all the powers necessary to carry out its functions, including the power to sue and be sued." *Doe v. Portland Hous. Auth.*, 656 A.2d 1200, 1201 n. 2 (Me. 1995); *see* 30–A M.R.S. §§ 4721(1), 4741(1) (2005).

2. Section 982.551 of the Code of Federal Regulations governs many of the obligations of a Section 8 program participant in order to be eligible to participate in the subsidy program. It provides, in pertinent part:

   (a) Purpose. This section states the obligations of a participant family under the program.

   (b) Supplying required information.—(1) The family must supply any information that the PHA or HUD determines is necessary in the administration of the program .... "Information" includes any requested certification, release or other documentation.

ing appealed the decision to terminate her from the program, and a subsidy termination hearing was conducted by a hearing officer in July of 2004. Dowling, who was represented by counsel, was the only witness who testified at the hearing. She admitted to participating in the side agreement, and testified that it was initiated by Wortman.

[¶ 7] The hearing officer also reviewed and took into account the notes kept by McDonald, including the notes of the conversation McDonald had with Wortman's son about the side agreement between Wortman and Dowling. Those notes reflected that Wortman's son told McDonald that it was Dowling who initiated the side agreement. Following the hearing, the hearing officer concluded (1) that Dowling's failure to inform the Authority of her side agreement with Wortman violated the information disclosure mandate of section 982.551(b), and (2) that the side agreement in which Dowling participated constituted fraud in violation of section 982.551(k). The Authority terminated Dowling's Section 8 subsidy.

[¶ 8] Dowling petitioned for review of the Authority's decision in the Superior Court pursuant to M.R. Civ. P. 80B. The court remanded the matter to the Authority for further findings and conclusions, but retained jurisdiction over the matter while awaiting those further findings. Following the hearing officer's issuance of such further findings and conclusions as requested by the court, which included a finding that it was Dowling who initiated the side

agreement, the court affirmed the decision of the Authority. Dowling then filed this appeal.

## II. DISCUSSION

[¶ 9] When, as here, the Superior Court acts in its intermediate appellate capacity, we review directly the decision of the Authority for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863, 866 (quotation marks omitted). In order to vacate an agency's decision, we must determine that no competent record evidence exists to support the decision. *Id.*

[¶ 10] Dowling contends that (1) the hearing process employed by the Authority violated federal regulations and her due process rights because the Authority failed to produce a witness for cross-examination; (2) the Authority's finding that she violated Section 8 program requirements by not providing required information was not supported by substantial evidence; (3) the Authority's finding that she committed fraud by initiating the side agreement was not supported by substantial evidence; and (4) the Authority erred in terminating Dowling's Section 8 subsidy as a sanction.

### A. The Housing Authority's Failure to Produce a Witness

[¶ 11] Dowling relies on 24 C.F.R. § 982.555(e)(5) (2005) to argue that any witness whose testimony is to be relied upon by the Authority must be produced

---

. . . .

(4) Any information supplied by the family must be true and complete.

. . . .

(k) Fraud and other program violation. The members of the family must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs.

24 C.F.R. § 982.551 (2005). The Authority is authorized to terminate subsidy assistance "[i]f the family violates any family obligations under the program (see § 982.551)" or "[i]f any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program." 24 C.F.R. § 982.552(c)(1)(i), (iv) (2005).

in person by the Authority and be subjected to questioning by the Section 8 participant. She contends that the Authority violated section 982.555(e)(5), as well as her right of procedural due process, when it considered McDonald's notes about the conversation McDonald had with Wortman about the side agreement without producing Wortman himself for cross-examination by Dowling.

[¶ 12] "The fundamental requisite of due process of law is the opportunity to be heard," including "timely and adequate notice detailing the reasons for the proposed termination, and an effective opportunity to defend by confronting any adverse witness and by presenting [her] own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (quotation marks omitted). Due process considerations are indeed implicated in the termination of a welfare subsidy, and the process that is due "must be tailored to the capacities and circumstances of those who are to be heard." *Id.* at 268–69, 90 S.Ct. 1011. In the case of termination of a Section 8 subsidy, due process is fulfilled by an informal, pre-termination evidentiary hearing at which the participant in the rental assistance program is present and may be represented by counsel. *Id.* at 270–71, 90 S.Ct. 1011; *see* 24 C.F.R. § 982.555. Within the context of such informal hearings, both the Authority and the participant "must be given the opportunity to present evidence, and may question any witnesses." 24 C.F.R. § 982.555(e)(5).

[¶ 13] Dowling, however, never objected to the Authority's consideration of McDonald's notes. Assuming that Dowling did have the right to cross-examine any witness on whose evidence the Authority relied, we have nevertheless held in a variety of contexts that a party may fail to preserve rights, including those of constitutional import. *See Berg v. Bragdon*, 1997 ME 129, ¶ 9, 695 A.2d 1212, 1214 ("We have stated that issues raised for the first time on appeal are generally unpreserved. We have applied this rule consistently whether the alleged right is constitutional or based on the common law.") (citation and quotation marks omitted); *see also Irving Oil Corp. v. Me. Aviation Corp.*, 1998 ME 16, ¶ 5, 704 A.2d 872, 874 ("Because [the defendants] failed to preserve the issue in the Superior Court, we will not review it on appeal even though it is one of constitutional dimension."). Because Dowling failed to object at the Authority's administrative hearing to the admission of the notes taken by McDonald of her conversation with Wortman's son, Dowling's challenge to the admission of those notes is unpreserved for appellate review.

B. Dowling's Failure to Supply Required Information

[¶ 14] The Authority is authorized to terminate a Section 8 recipient's eligibility for failure to "supply any information that the [Authority] or [the Department of Housing and Urban Development] determines is necessary in the administration of the program," or for failure to supply "true and complete" information. 24 C.F.R. §§ 982.551(b)(1), (4), 982.552(c)(1)(i). "Information" within the meaning of section 982.551(b) is defined as "any requested certification, release or other documentation." 24 C.F.R. § 982.551(b)(1). In this case, the Authority found that Dowling violated this requirement by failing to disclose to it the existence of the side agreement with Wortman.

[¶ 15] The Authority's finding is supported by Dowling's own testimony during the hearing before the Authority that, al-

though she was aware that the Section 8 program required that all utilities be included in her rent, she did not disclose the side agreement to the Authority because she was afraid to do so, she "did not want to be homeless again," and she "was settled in ... [and] very happy, very comfortable." Further, Dowling had previously signed the "Things You Should Know" document in which she was informed of her duty to report any type of Section 8 abuse to the Authority. Thus, the Authority's determination that Dowling failed to supply all information necessary to administering her Section 8 eligibility, i.e. the existence of an unapproved side agreement with her landlord, is amply supported by the evidence.

## C. Dowling's Commission of Fraud by Participation in the Side Agreement

[¶ 16] Pursuant to 24 C.F.R. § 982.551(k), the recipient of a Section 8 subsidy "must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs." 24 C.F.R. § 982.551(k). The definition of "fraud" is not provided in any of the relevant statutes or regulations regarding Section 8 rental subsidies. Nevertheless, Dowling, the Authority, and the Superior Court analyzed the definition of fraud in sections 982.551(k) and 982.552(c)(1)(iv) with reference to Maine's common law tort of fraudulent misrepresentation. Fraudulent misrepresentation occurs when someone:

> (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to [her] damage.... Reliance is unjustified only if the plaintiff knows the repre-

sentation is false or its falsity is obvious to [her].

*Francis v. Stinson,* 2000 ME 173, ¶ 38, 760 A.2d 209, 217 (quotation marks omitted) (alteration in original).

[¶ 17] In this case, the evidence supports a finding that Dowling committed each element of fraudulent misrepresentation, including the evidence that Dowling falsely represented to the Authority that she was complying with Section 8 eligibility requirements by continuing to benefit from the program without disclosing her participation in an unapproved side agreement with her landlord; that she had actual knowledge that she was not complying with the program by participating in the side agreement for several months; that she secretly participated in the side agreement in order to obtain better housing and/or in order to avoid moving again; and that in reliance on its understanding that Dowling was complying with Section 8 requirements, the Authority continued to subsidize Dowling's rent. Thus, sufficient evidence exists to support the Authority's finding of fraud.

## D. The Sanction Imposed by the Authority

[¶ 18] Finally, the dissent articulates Dowling's contention that the Authority imposed the ultimate sanction of termination of her subsidy based largely on its finding that she *initiated* the agreement, as opposed to her mere participation in the agreement, which finding, Dowling argues, is not supported by substantial evidence because it is based only on the hearsay notes of McDonald. We disagree.

[¶ 19] The Authority is vested with the power to terminate subsidy assistance for the commission of any act of fraud pursuant to 24 C.F.R. § 982.552(c)(1)(iv), or for violation of any program obligation pursuant to section 24 C.F.R. § 982.552(c)(1)(i)

(2005). The evidence revealed that Dowling failed to uphold her obligation to supply true and complete information by failing to disclose the side agreement to the Authority. Further, Dowling concedes that she committed at least a program violation by participating in the side agreement; that participation in the side agreement supports the Authority's finding of fraud within the meaning of the regulations. Accordingly, the Authority had the power to terminate Dowling's subsidy for either her failure to supply information about the side agreement or for her participation in it, and certainly for both.

[¶ 20] Moreover, there is little support in the record for Dowling's contention, articulated in the dissent, that the Authority's decision to terminate Dowling's subsidy was largely dependent on its finding that she initiated the side agreement. The Authority's initial decision, expressed in a letter to Dowling dated July 22, 2004, which was issued after the hearing at which McDonald's notes were admitted, informed Dowling that it was terminating her subsidy pursuant to 24 C.F.R. § 982.551, and went on to quote portions of that section, including the portion related to failure to supply required information. The letter further stated that "[a]ll Section 8 tenants during orientation are warned that they are committing fraud *if they enter into a side agreement* with a landlord to pay him more than the [contract provides]," and that Dowling was "equally responsible for *entering into a side agreement* with Mr. Wortman and failing to report that information to [the Authority] because it was favorable to [her] at that time." (Emphases added.) Although the letter did mention Wortman's version of the story that Dowling approached him to initiate the side agreement, the letter did not indicate that the initiation of the side agreement was, by itself, the finding on which the termination

of her subsidy is based. Indeed, as the quotes above illustrate, it was Dowling's mere participation in the side agreement that was the focus of the letter terminating her subsidy. It was only after the Superior Court remanded the matter back to the Authority for further findings and conclusions that the Authority specifically found that Dowling initiated the side agreement with Wortman.

[¶ 21] Further, the Authority's April 2005 decision does not state that it was Dowling's *initiation* of the side agreement, as opposed to the fact of her *participation* in the agreement, that was the basis of the Authority's termination of her subsidy. The April 2005 decision lists a series of numbered factual findings, and also sets out the legal conclusions of the Authority, including Dowling's sanction. The Authority's conclusions include: (1) that Dowling "failed to supply [the Authority with] information required of her which is necessary for the administration of the Section 8 program in violation of 24 C.F.R. § 982.551(b)"; (2) that "side agreements such as the one between Ms. Dowling and Mr. Wortman are illegal and are considered fraudulent"; (3) that "Ms. Dowling was ... aware that the side agreement which she *entered* was considered fraud"; and (4) that despite Dowling's obligation to report such agreements to the Authority, "she concealed that agreement from the ... Authority and failed to report it. Her failure to report this agreement prevented the ... Authority from discovering the agreement, and taking any appropriate action regarding Mr. Wortman." (Emphasis added.) Finally, the Authority's final conclusion and imposition of the sanction states:

HUD regulations set forth at 24 C.F.R. § 982.552(c)[(1)](i) and (iv) specifically provide that a [Housing Authority] may terminate assistance if the recipient vio-

lates any program obligations set forth at 24 C.F.R. § 982.551, or if the recipient commits fraud. By entering into this fraudulent agreement and refusing to disclose it to the Housing Authority, I conclude that Ms. Dowling violated 24 C.F.R. §§ 982.551(b) and (k) and that her assistance should be terminated as a result.

[¶ 22] These conclusions are replete with references to Dowling's failure to disclose the existence of the side agreement to the Authority, as well as her fraudulent participation in the side agreement. Nowhere among the Authority's conclusions, including its ultimate conclusion and sanction, is there any explicit reliance on Dowling's initiation of the side agreement. Dowling's contention that the sanction of termination of her Section 8 subsidy was based on her initiation of, as opposed to her participation in and her failure to disclose, the side agreement is not supported by the language of the decision. *See Poland v. Webb*, 1998 ME 104, ¶ 10, 711 A.2d 1278, 1280 (noting that we review a fact-finder's factual findings in the light most favorable to the prevailing party).

[¶ 23] Moreover, the evidence on which the Authority based its finding that Dowling initiated the side agreement—the notes of McDonald's conversation with the landlord's son—were considered by the Authority without objection from Dowling. The applicable federal regulations themselves provide that "[e]vidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5) (2005). Furthermore, the rules of evidence, including those regarding hearsay, do not apply in proceedings for the imposition of a sanc-

tion, a concept long reflected in M.R. Evid. 1101(b)(4).[3] In determining a criminal sentence, a court may consider information based on investigations and reports conducted by agency officials. *See State v. Rosa*, 575 A.2d 727, 731 (Me.1990). Information from newspaper articles may also be subject to the sentencing court's consideration. *See State v. Fleming*, 644 A.2d 1034, 1037 (Me.1994). Thus, the consideration of hearsay evidence in determining an appropriate sanction, criminal or administrative, by the sanctioning authority or court is permissible.

[¶ 24] Although Dowling argues that the sanction imposed on her for her participation in the side agreement and her failure to disclose that agreement to the Authority is unduly harsh, pursuant to section 982.552(c)(1)(i), (iv), the Authority is empowered to terminate subsidy assistance in such circumstances. The Authority "may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure" in determining the appropriate sanction. 24 C.F.R. § 982.552(c)(2)(i). The weight to be given to such mitigating factors, however, is within the discretion of the Authority. In this case, the Authority concluded that it "[did] not find that any such [mitigating] circumstances in this case would justify refraining from terminating Ms. Dowling's assistance." Participation in an improper side agreement with a landlord for a period of eight months and failing to disclose the agree-

<hr/>

**3.** "The rules other than those with respect to privileges do not apply in ... proceedings for sentencing ...." M.R. Evid. 1101(b)(4).

ment to the Authority, with knowledge that such action violated the tenant's obligations for Section 8 eligibility, is sufficiently serious to merit termination of the subsidy. Because the Authority has power to terminate rental subsidies, and because its findings are supported by substantial evidence in the record, the Authority neither erred nor acted beyond its discretion in terminating Dowling's subsidy.

The entry is:

Judgment affirmed.

LEVY, J., with whom SILVER, J., joins, concurring in part and dissenting in part.

[¶ 25] I join in the Court's opinion except with respect to part D concerning the sanction that was imposed by the Authority against Dowling. The hearing officer recommended that the ultimate sanction—termination from Section 8 housing assistance—be imposed based largely on his finding that Dowling had initiated the fraudulent side agreement she had with her former landlord, Robert Wortman Sr. Because this finding is not supported by substantial evidence in the administrative record, the judgment should be vacated and the Authority required to reconsider the appropriate sanction.

A. The Decision to Terminate Dowling's Section 8 Housing Assistance

[¶ 26] If a tenant violates any program obligations set forth in the federal regulations, a housing authority may, but is not required to, terminate the tenant's Section 8 assistance. *See* 24 C.F.R. §§ 982.551, 982.552(c)(2)(i) (2006). The regulations provide that before imposing a sanction for a violation, a public housing authority may consider:

[A]ll relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

*Id.* § 982.552(c)(2)(i).

[¶ 27] In this case, the hearing officer's decision acknowledged the discretion afforded by section 982.552(c)(2)(i), but he concluded that no mitigating circumstances existed, in part, because "her participation in this arrangement allowed her to live in a unit which she preferred to the original unit offered by Mr. Wortman." This finding refers to the prior finding that Dowling had initiated the side agreement with Wortman "[i]n order to have the opportunity to move into a more favorable rental unit."

[¶ 28] Dowling was the only witness at the administrative hearing. She admitted to participating in the side agreement with Wortman, explaining that Wortman had come to her house and proposed the side agreement, and that she only agreed to it because she feared that she and her young son would be evicted by Wortman and left homeless if she refused the arrangement.

[¶ 29] The only support in the administrative record for the hearing officer's finding that Dowling initiated the side agreement was an entry in the handwritten notes of Sally McDonald, an employee of the Authority. The entry appears to be based on a telephone or in-person discussion McDonald had with Wortman's son, Robert Wortman Jr.:

6/9/04 Spoke with Bob Wortman, Jr. He stated that [Dowling] had requested that his father Bob Sr. charge the $600 and she would pay the utilities directly to them. They were not going to let her have the unit because the Rent Reasonable was below fair market.

[¶ 30] Apart from Dowling's testimony and McDonald's handwritten note, there was no other evidence concerning whether Dowling initiated the side agreement to obtain a better unit, or whether Wortman initiated the side agreement and Dowling felt compelled to accept it because she feared becoming homeless if she refused. The question thus presented is whether the entry in McDonald's handwritten notes is substantial evidence that supports the finding that Dowling initiated the side agreement.

## B. Uncorroborated Hearsay Evidence and the Substantial Evidence Test

[¶ 31] Courts uphold administrative findings so long as they are supported by substantial evidence. *See Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863, 866. Administrative findings are reviewed to determine whether "a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186.

[¶ 32] We have previously had occasion to apply the substantial evidence standard in cases involving challenges to administrative findings based entirely on hearsay. In *Keller v. Maine Unemployment Insurance Commission*, 477 A.2d 1159, 1161 (Me.1984), we considered whether the plaintiff's double hearsay evidence of a

telephone call between his friend and an unidentified Commission employee was admissible pursuant to the evidentiary standard of the Maine Administrative Procedures Act. We concluded that the double hearsay, although not inadmissible, did not satisfy the substantial evidence standard without additional corroborating evidence in the form of the employee's or the friend's testimony. *Id.*; *see also Heal v. Me. Employment Sec. Comm'n*, 447 A.2d 1223, 1225–26 (Me.1982).

[¶ 33] More recently, in *State v. James*, 2002 ME 86, 797 A.2d 732, we addressed the importance of assessing the reliability of hearsay evidence when determining the weight it should be given in probation revocation hearings.[4] We noted in *James* that a variety of factors should be considered, including: (1) "whether the hearsay evidence is corroborated, in whole or part, by live testimony presented at the ... hearing or an admission"; (2) "the source of the hearsay, including the potential for bias or motive to fabricate"; and (3) "whether the hearsay evidence is sufficiently detailed." *Id.* ¶ 15, 797 A.2d at 737. The *James* criteria comport with the approaches adopted by various courts that have grappled with the question of the role of hearsay when applying the substantial evidence standard in connection with administrative proceedings.[5]

**4.** In *State v. James*, the defendant's probation officer, who was away on vacation when the alleged probation violations occurred, testified about the results of an intoxilyzer test and conversations with another probation officer and the arresting police officer regarding conduct by the defendant. 2002 ME 86, ¶¶ 4–6 & n. 3, 797 A.2d 732, 733–34. The trial court overruled the defendant's hearsay objections and found that James had violated his probation. *Id.* ¶¶ 7–8, 797 A.2d at 734. On appeal, we concluded that this evidence lacked sufficient indicia of reliability, and because this was the only evidence presented by

the State, we vacated the judgment. *Id.* ¶¶ 16–19, 797 A.2d at 737–38.

**5.** Most notably, in *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court concluded that written reports by licensed physicians may constitute substantial evidence supporting a finding adverse to a claimant seeking Social Security disability benefits. The Court considered a range of factors in concluding that the hearsay was reliable and had probative value, including the following: (1) the identity of the physicians was known and, as independent examiners, they could not be ascribed an

[¶ 34] Our review of administrative findings based exclusively on hearsay evidence must recognize the need for informality in administrative proceedings, but also the imperative that agency proceedings should not degenerate to the point where critical findings are based exclusively on hearsay evidence that carries no indicia of reliability. The suggestion in the majority opinion that administrative proceedings are comparable to criminal sentencing hearings is, in my view, mistaken because criminal sentencing hearings are not subject to the substantial evidence standard. If we permit agency decisions to rest on nothing more than newspaper articles, a possibility suggested by the majority opinion, the substantial evidence test will be rendered meaningless.

[¶ 35] Accordingly, whether hearsay evidence is, standing alone, substantial evidence that can support administrative findings must be resolved on a case-by-case basis and in a manner that is consistent with the goal of promoting informal hearing processes that remain true to the overriding goal of fundamental fairness. The substantial evidence test is not an exacting standard and it does not impose an undue burden on administrative decision-makers. Yet the standard serves an important societal function by providing a modest degree of assurance that important decisions affecting the lives of individuals will be based on something more than unsubstantiated rumor or attenuated third-hand information.

C. The Uncorroborated Hearsay Evidence in This Case

[¶ 36] Applying the *James* criteria, the brief entry in Sally McDonald's notes that

"interest on their part in the outcome of the administrative proceeding beyond the professional curiosity a dedicated medical man possesses," *id.* at 403, 91 S.Ct. 1420; (2) the "vast workings of the social security administrative system make for reliability and impartiality in the consultant reports," *id.*; (3) the reports were based on an actual examination of the claimant and accepted medical procedures, *id.* at 403–04, 91 S.Ct. 1420; (4) the reports addressed a comprehensive range of examinations to which the claimant was subjected, *id.* at 404, 91 S.Ct. 1420; (5) the reports were independent of one another, but were not inconsistent, *id.*; (6) the claimant could have subpoenaed the physicians if he had wished, *id.* at 404–05, 91 S.Ct. 1420; (7) medical reports have been admitted in judicial proceedings as an exception to the hearsay rule, *id.* at 405, 91 S.Ct. 1420; (8) courts have traditionally accepted the use of written medical reports in Social Security disability cases, *id.* at 405–06, 91 S.Ct. 1420; and (9) given the magnitude of disability claim hearings conducted each year, the cost of providing live testimony by examining physicians "would be a substantial drain on the trust fund and on the energy of physicians already in short supply," *id.* at 406, 91 S.Ct. 1420.

The federal circuit courts have applied the indicia of reliability highlighted in *Perales* as multi-factor analyses. *See R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n*, 166 F.3d 815, 819 (6th Cir. 1998); *Keller v. Sullivan*, 928 F.2d 227, 230 (7th Cir.1991); *Johnson v. United States*, 628 F.2d 187, 190–91 (D.C.Cir.1980); *Calhoun v. Bailar*, 626 F.2d 145, 149–50 (9th Cir.1980); *Sch. Bd. v. Dep't of Health, Educ. & Welfare*, 525 F.2d 900, 906 (5th Cir.1976). State courts have also adopted this general approach to determine under what circumstances uncorroborated hearsay can satisfy the requirement of substantial evidence. *See Sch. Comm. v. Mass. Comm'n Against Discrimination*, 423 Mass. 7, 666 N.E.2d 468, 474 (1996); *Indus. Claims Appeals Office v. Flower Stop Mktg. Corp.*, 782 P.2d 13, 17–19 (Colo.1989); *Unemployment Comp. Bd. of Review v. Ceja*, 493 Pa. 588, 427 A.2d 631, 639–43 (1981). A number of states require that evidence satisfies even higher standards of reliability in administrative hearings than the standards articulated in *Perales. See, e.g., Bean v. Mont. Bd. of Labor Appeals*, 290 Mont. 496, 965 P.2d 256, 260 (1998); *Gehin v. Wis. Group Ins. Bd.*, 278 Wis.2d 111, 692 N.W.2d 572, 590 (2005). Thus, standing alone, hearsay evidence may satisfy the substantial evidence test only if it carries with it some indicia of reliability.

characterizes Dowling as the initiator of a fraudulent side agreement does not rise to the level of substantial evidence.

[¶ 37] First, the multi-level hearsay evidence was neither sworn, nor corroborated by any testimony or other evidence. The statement attributed to Wortman appears to have been made to his son, who then reported it to McDonald, who then recorded it in her notes.

[¶ 38] Second, the source of the hearsay had a substantial potential for bias or motive to fabricate. Wortman had a motive to blame Dowling for the side agreement because his participation in the agreement was itself a violation of the rules and put his own interests as a Section 8 landlord at risk.[6]

[¶ 39] Third, the brief entry in McDonald's notes provides no details with which to meaningfully assess the accuracy of the statement attributed to Wortman. In addition, the administrative record provides no basis for us to presume the reliability of the written records of the Authority's employees. *See Richardson v. Perales*, 402 U.S. 389, 403, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (treating written medical reports prepared by independent medical examiners in connection with a "vast" administrative process as having an indicia of reliability).

[¶ 40] The evidence supporting the finding that Dowling initiated the side agreement is decidedly insubstantial, and the hearing officer's adoption of that evidence as a finding was in error. The Authority's ultimate decision to terminate Dowling's participation was undoubtedly influenced by the hearing officer's rejection of her claim that she was coerced into accepting the side agreement and his finding that

she had initiated the side agreement for her own benefit. Any error regarding this critical finding cannot be excused as harmless.

[¶ 41] The Authority should be required to reconsider the sanction in this case and, in particular, whether Dowling's participation in the side agreement justifies the complete termination of her Section 8 benefits. In doing so, the Authority would have the opportunity to also consider other relevant information that the hearing officer failed to address pursuant to section 982.552(c)(2)(i), including "the effects of ... termination of assistance" on Dowling's young son as a "family member[ ] ... not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i). The judgment should be vacated and this case remanded to the Authority.

---

6. The record does not reflect whether Wortman was sanctioned by the Authority for his participation in the agreement.